## THE STATE OF CONNECTICUT *vs.* LAWRENCE CULLUM.

Third Judicial District, Bridgeport, October Term, 1929.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 25th—decided November 25th, 1929.

*John F. Tobin,* with whom, on the brief, was *Thomas F. Devine,* for the appellant (the accused).

*Charles O'Connor,* with whom, on the brief, was *Edward J. McDonald,* for the appellee (the State).

WHEELER, C. J. The accused is charged with the violation of a provision of an ordinance of the city of Waterbury; the ordinance is described in the complaint to the extent of giving the date and body by whom it was passed and adopted, together with the fact and date of the mayor's approval. The parties have assumed that the entire ordinance was before us, although it does not appear in the record we shall so treat it. The ordinance is entitled an ordinance relative to a wholesale and retail market. It establishes such a market in the city of Waterbury, places it under the control of the board of public works and vests in them the power to adopt rules and regulations governing the market. It provides for the care, inspection and police supervision of the market and for its division into stalls to be rented to occupants on stated terms and which shall be assigned to "the eligible person first applying therefor to the market master." Section 2 provides: "Goods may be offered for sale in this market, only by producers who have grown and brought them to market," etc. Section 10 provides: "Any person violating any of the provisions of this ordinance shall be fined, upon conviction, in any sum not less than one dollar and not more than one hundred dollars."

The information charges the accused with violating § 2, which we have quoted, by selling and offering for sale in the public market place of the city of Waterbury, fruit, produce and vegetables not grown by him. The court overruled the demurrer of the accused to the information, inquired into the facts, found the accused guilty and sentenced him to pay a fine and the costs of the prosecution. The appeal is from the overruling of the demurrer.

The first two grounds of the demurrer raise the single point that the allegations of the information are too

vague to constitute a crime. It is urged that it is impossible to determine the scope of the meaning of the terms of § 2, "Goods may be offered for sale in this market, only by producers who have grown and brought them to market." The language seems to us free from ambiguity. One of the ordinary dictionary meanings of a producer is one who grows agricultural products. The word "Goods" is used in the sense of agricultural products. "Goods" of this character, this section provides, may be offered for sale in this market by the growers of agricultural products who have grown and brought their agricultural products to this market.

The two remaining grounds of demurrer attack the constitutionality of the ordinance because of its unreasonableness and because it seeks to prevent the accused from engaging in an ordinary lawful business contrary to the provisions of the Constitution of the State of Connecticut and that of the United States. The city of Waterbury by its charter was authorized through its board of aldermen and mayor, to adopt the ordinance in question. That the establishment of public markets and the regulation of them and of the sale of food therein are measures for the public welfare and reasonable exercises of the police power are too clear to make needful their demonstration. *Lamar* v. *Weidman*, 57 Mo. App. 507; *Municipality No. 1* v. *Cutting*, 4 La. Ann. 335.

The sale of agricultural products is a lawful business. Its free conduct cannot be interfered with unless this be done in the preservation of the public health, safety, welfare, morality, or convenience as the interest of the public require and embracing new exigencies and changed conditions. Neither can there be an unwarranted and arbitrary interference with the right to carry on a lawful business. *State* v. *Porter*, 94 Conn.

639, 642, 110 Atl. 59; *Dobbins* v. *Los Angeles,* 195 U. S. 223, 236, 25 Sup. Ct. 18; *Opinion of the Justices,* 234 Mass. 597, 603, 127 N. E. 525. "To justify the State in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals." *Lawton* v. *Steele,* 152 U. S. 133, 137, 14 Sup. Ct. 499. Every presumption is to be made in favor of the validity of the ordinance and we will not declare it unconstitutional unless it be clearly so.

Discrimination in an ordinance against those of the same class will vitiate the ordinance. *Southern Ry. Co.* v *Greene,* 216 U. S. 400, 417, 30 Sup. Ct. 287.

"The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the laws." *Soon Hing* v. *Crowley,* 113 U. S. 703, 709, 5 Sup. Ct. 730.

An ordinance which operates upon all within the class equally will not be open to the charge of being discriminatory. *Yick Wo* v. *Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064; *State* v. *Schlemmer,* 42 La. Ann. 1166, 10 L. R. A. 135; *Barbier v. Connolly,* 113 U. S. 27, 5 Sup. Ct. 357; 2 Dillon on Municipal Corporations (5th Ed.) § 593.

Statutes or ordinances, where "persons engaged in the same business . . . are . . . subject to different restrictions, or are held entitled to different privileges under the same conditions," will be held to be discriminatory. 2 McQuillin on Municipal Corporations (2d

Ed.) § 775. Legislation cannot arbitrarily divide a class into two parts and constitute a different rule of law governing each of the parts of the severed class. The basis for a reasonable classification must show such a difference as to justify the division. "A proper classification . . . must embrace all who naturally belong to the class—all who possess a common disability, attribute or qualification and there must be some natural and substantial difference germane to the subject and purposes of the legislation between those within the class included and those whom it leaves untouched." *Fountain Park Co.* v. *Hensler,* 199 Ind. 95, 102, 155 N. E. 465, 467.

We held in *Silver* v. *Silver,* 108 Conn. 371, 378, 143 Atl. 240, that discriminations which are arbitrary or unreasonable will render legislation void.

Let us apply these principles to the provision of the ordinance of whose violation the accused was found guilty. The basis of the classification does embrace those who would naturally belong to the class, having a common attribute. They all must be producers who have grown and brought their agricultural products to this market. There is a substantial difference between these producers of their own grown products and the dealers who have purchased of others, presumably products grown at a distance. If the municipal board of aldermen were of the opinion that the public health was best subserved by the establishment of a public market where none but the grower of his own agricultural products could market them, we cannot hold as matter of law that the legislative opinion was unquestionably unsound. Nor can we hold that products so grown and offered for sale will not be more beneficial to the people who are able to buy such products than similar purchases from dealers who have purchased them from distant points. The economic advantage to

the producers in, and within a marketable area to, Waterbury is obvious and the indirect advantage to Waterbury as the business center of this locality is apparent. The ordinance operates upon all producers constituting the class equally. The differences in characteristics between these two classes justify as a reasonable classification the division into these two classes. If this were not as clear as it is, the accused who assails the classification must assume the burden of showing that it does not rest upon any reasonable basis, and we must assume the existence of any state of facts which can reasonably be conceived of as existing at the time of the enactment of the law. *Bachtel* v. *Wilson,* 204 U. S. 36, 41, 27 Sup. Ct. 243. Manifestly the ordinance cannot be held to be discriminatory. Not only is it uniform in its operation, but also impartial and reasonable.

Two cases have arisen in Massachusetts which are directly in point and both were decided adversely to the position maintained by the accused. *Nightingale, Petitioner, &c.,* 28 Mass. (11 Pick.) 168, 171, was a criminal action for the violation of a by-law of the city of Boston, providing "that no inhabitant of the city of Boston, or of any town in the vicinity thereof, not offering for sale the produce of his own farm," etc., should, "without the permission of the clerk of Faneuil Hall Market, be suffered to occupy any stand with cart, sleigh or otherwise, for the purpose of vending commodities in either of the streets mentioned in the first section of this ordinance," etc. We quote a part of the opinion upon the applicable ground of appeal: "It has been argued by the petitioner's counsel, that the city ordinance is void, for several reasons. 1. Because it is partial, and does not operate upon all the citizens of the commonwealth equally, but makes a distinction between the citizens of Boston and its vicinity, and the

inhabitants of distant towns in the commonwealth. We cannot think that there is any weight in this objection. A regulation of this description could hardly be framed so as to avoid a partial operation arising from local situation and other circumstances. But the partial operation of the ordinance can be no objection to its validity, provided it does not infringe private rights; and it is very clear that it does not."

The validity of a like by-law of Boston was sustained in *Commonwealth* v. *Rice,* 50 Mass. (9 Metc.) 253. In the course of its opinion the court, by Chief Justice Shaw, said (p. 258): "It is contended that the by-law is contrary to common right, in restraint of trade, against public policy, unreasonable and void. But the court are of opinion that the by-law is not open to these objections. The city have, at great expense, provided these accommodations; and they have a right so to control them, as best to promote the welfare of all the citizens. And we think they are well calculated to promote the public and general benefit, as well of the country as the city, by securing free and convenient stands for actual producers, and those who reside at a distance." Counsel for the accused in their brief seek to invalidate this ordinance upon the claim that § 5 of the ordinance is invalid. We do not understand that grounds three and four of the demurrer relate to § 5 of the ordinance but to § 2, and for that reason we have confined our discussion upon the constitutional grounds to that section alone. Had § 5 been before us there is nothing in its terms which would invalidate it, or the ordinance of which it is a part.

There is no error.

In this opinion the other judges concurred.