STATE OF CONNECTICUT *v.* THEODORE ZWERDLING

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NOS. CR 3-2861, CR 3-2961, CR 3-2973

Argued August 17—decided October 15, 1964

*George J. Malinsky,* of Georgetown, for the appellant (defendant).

*Americo S. Ventura,* of Danbury, for the appellee (state).

DiCENZO, J. The defendant was presented on three informations, each specifying a violation on a

different Sunday. The three cases were tried together. Except for the three separate Sunday dates, as specified in the informations, the judgments, appeals, findings, and assignments of error are identical in all three cases. The appellant filed one brief for all three cases, and the appeals were argued as one case. The decision in the first case will control and dispose of the other two cases.

The finding in the first case establishes the following facts. The defendant was an employee and working as a salesman in a retail shoe store. He sold shoes on the Sunday specified in the information. The sale of shoes on Sunday is prohibited by General Statutes § 53-300. This sale was not one of necessity or mercy, nor was it within any of the classes of products excepted from the operation of the statute. The defendant was not otherwise excepted from the operation of the statute. He did not take the stand or offer any evidence in his own behalf.

The defendant assigns as error the trial court's conclusion that he was guilty of the crime as charged beyond a reasonable doubt. The only contention of the defendant is that § 53-300 does not apply to employees but only to owners or those who have a financial interest in a business. The defendant has not referred to any authorities which support his argument but relies principally on his interpretation of the language of the statute. The significant portions of § 53-300 are stated in the footnote.[1]

[1] "Sec. 53-300. WORK AND RECREATION ON SUNDAY. Any person who does, or requires an employee to do, any secular business or labor, except works of necessity or mercy, or, unless required by necessity or mercy, keeps open any shop, warehouse or manufacturing or mechanical establishment, or sells or exposes for sale any goods, wares or merchandise, or, except as hereinafter provided, engages in any sport, between the hours of twelve o'clock Saturday night and twelve o'clock Sunday night next following, shall be fined not more than fifty dollars. . . ."

The present § 53-300 and its several predecessors, commonly known as the Sunday blue laws, have been before the courts of this state many times. Matters occurring on Sunday, namely, contracts, negligence, fraud, and sales of personal property and gifts, have at one time or another been subjects of examination by the courts of this state. See annotation to General Statutes § 53-300. There have been civil cases and criminal cases under these laws since colonial times. A brief history of this legislation is found in *Horton* v. *Norwalk Tramway Co.,* 66 Conn. 272, 274. Another study of the Connecticut Sunday laws commencing with the year 1650, together with an analysis of Connecticut cases from *Wight* v. *Geer,* 1 Root 474, to *Nygren* v. *Potocek,* 133 Conn. 649, will be found at 22 Connecticut Bar Journal 276.

As far as Connecticut goes, the present attack on the statute is novel in nature and is emphasized by the general lack of authority in support of the defendant's proposition. Changing times and conditions have brought about legislative changes in the Sunday laws. "During the Nineteenth Century, in Connecticut, as in other jurisdictions, there has been a steady, gradual trend toward more freedom in secular activity on Sunday." 22 Conn. B.J. 280. In a similar vein, in the twentieth century, but with the force of strong dicta are the statements of Chief Justice Inglis in *State* v. *Hurliman,* 143 Conn. 502, 507, and Justice Mellitz in *State* v. *Shuster,* 145 Conn. 554, 558. In the former case, Chief Justice Inglis wrote, "Over the years the trend has been toward a liberalization of the law to permit labor and other activities which promote the recreational purposes of the day." In the latter case, Justice Mellitz stated, "Such legislation is being increasingly regarded as day-of-rest legislation rather than as Sabbath or Sunday closing laws."

Nowhere in our Connecticut cases is there a suggestion of a difference in the degree of participation in a Sunday sale that is prohibited, nor that a proprietary or financial interest is a necessary requisite to include the act within the prohibitions of the statute. The basic mandate of the statute has not changed in any way. The language is clear and unequivocal: "Any person who does . . . any secular business or labor . . . ." There is nothing vague or ambiguous about this language. This statute prohibits a particular type of performance on a certain day. Omitting the stated exceptions, it prohibits secular business or labor by anyone. It is a play in semantics to argue that because the word "business" is used in the statute the law was designed to reach only those who have a financial interest in the transaction, and at the same time to contend that salaries are to be excluded in the determination whether the defendant had a proprietary interest in the sales.

The historical religious reasons for this law may or may not be as relevant under present conditions as they were initially. These are matters for the legislature and not for the court. In this respect the legislature has a wide field of choice. See *State* v. *Hurliman,* supra, and *State* v. *Shuster,* supra. Very recently this court affirmed a conviction under this statute, stating, "The language of the statute is clear and unambiguous; the legislative intent is to punish the individual offender no matter what his position is." *State* v. *Picheco,* 2 Conn. Cir. Ct. 584, 586.

There is no error.

In this opinion KINMONTH and KOSICKI, Js., concurred.